IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ALBERT PERRYMAN,**

      Plaintiff,

vs.                                                  Civ. No. 09-8ACT

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed December 9, 2010. [Doc. 24.] The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the Motion is well taken and will be granted.

## I. PROCEDURAL RECORD

Plaintiff, Albert Perryman, filed applications for disability insurance benefits and social security income on October 14, 2005. Tr. 23, 78, 628. He alleged that he was disabled since October 15, 2004, due to lower back injury, limited education and depression. Tr. 88, 119 138-39. His application was denied at both the initial and reconsideration levels.

The ALJ conducted a hearing on November 8, 2007. Tr. 643-668. At the hearing, Plaintiff was represented by an attorney. At the hearing Plaintiff amended his alleged date of onset to January 1, 2005. On July 23, 2008, the ALJ issued an unfavorable decision. Tr. 11-17. At step two of the analysis, the ALJ determined that Plaintiff had severe impairments "in the form of lumbar and

cervical disc disease, Depression, and obesity (citations omitted)." Tr. 13. At step 3, the ALJ found that Plaintiff's severe impairments do not meet or equal a listed impairment. *Id*. At step three, the ALJ made a step four finding that the Plaintiff retains the residual functional capacity ("RFC") of a wide range of unskilled "light" work. Tr. 16. At step five, the ALJ found that the grids would direct a finding of "not disabled." Tr. 17. In addition, the ALJ also found that "[c]onsidering Mr. Perryman's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (citations omitted)." Tr. 16.

On November 13, 2008, the Appeals Council issued its decision declining review of the ALJ's decision. Tr. 3-5. Thus, the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.984(a) & (d). Plaintiff filed his Complaint for judicial review of the ALJ's decision on January 6, 2009.

Plaintiff was born on August 13, 2006 and was 47 years of age on the date of the Commissioner's final decision. Tr. 59. He completed the ninth grade and was in special education classes throughout his schooling. Tr. 125, 653. His previous work experience includes groundskeeper, janitor, and dishwasher.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs*., 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ

is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for social security income benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

### III. DISCUSSION

Plaintiff asserts that the ALJ's finding at step five was not supported by the substantial evidence; the ALJ erred in giving controlling weight to a non-examining state agency consultant; and the ALJ erred in not discussing and not assigning weight to the opinion of the New Mexico Division of vocational rehabilitation.

A.     *Step four.*

At step two, the ALJ found that Plaintiff's depression was severe; however, he did not include any mental limitations at step four in assessing Plaintiff's RFC.  A severe impairment is one which significantly limits the physical or mental abilities to do basic work activities. 20 C.F.R. §404.1520(c).  In having found Plaintiff's depression severe at step two, the ALJ erred when he failed to include any mental limitation in his RFC analysis.  *Johnson v. Astrue*, 2009 WL 102681, *4 (D. Kan. 2009)(citations omitted)("[O]nce a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment....").[1]

In addition, the ALJ did not perform the required analysis at step four. It appears from the opinion that the ALJ relied on his step three analysis at step four. The ALJ addressed the four broad functional areas, known as the "B" criteria required in assessing whether the claimant's depression meets a Listing at step three. At step three the ALJ found that Plaintiff had mild limitation in activities of daily living; a mild limitation in social functioning; moderate limitation in concentration, persistence, or pace; and no episodes of decompensation.  Tr. 16.  At the end of his step three analysis, the ALJ wrote that "Mr. Perryman has a residual functional capacity compatible with the performance of a wide range of unskilled 'light' work." *Id.* This is a step four assessment. This statement follows the ALJ's analysis of the "B" criteria required in step three.  This is the extent of the ALJ's analysis in reaching his conclusion at step four.  The ALJ erred.

This issue is addressed in Social Security Ruling 96-8p which makes clear there is a difference in evaluating the severity of mental limitations at step three (based upon the four broad

---

[1] The Court notes that when the ALJ finds that a claimant has at least one severe impairment, the ALJ is required to complete the sequential evaluation process which requires him at step four to consider all of the claimant's medially determinable impairments, both severe and not severe.  *SSR 96-8p, 1996 WL 374184, at *4-5.*

functional areas identified in the psychiatric review technique at step three) and evaluating the ability to meet mental demands at steps four and five. SSR 96-8p, 1996 WL 374184.

> "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." SSR 96-8p, 1996 WL 374184, *4.

Plaintiff's RFC must be stated in terms of work-related functions.

> "Work-related mental activities generally required by competitive, renumerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting." *Id*. at *5.

The "ALJ should not state a mental RFC in terms of the four broad mental functional areas, but must make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand." *Tomberlin v. Astrue*, 2009 WL 126158, *14 (D. Kan. 2009) ("....SSR 96-8p makes clear that it would have been error for the ALJ to directly include his findings regarding the four broad mental functional areas in his final RFC assessment.").

> In addition, SSR 96-8p contains narrative requirements.
>
> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a work, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistences are ambiguities in the evidence in the case record were considered and resolved.

*Id*. at 6.

The ALJ did not include Plaintiff's mental impairment in Plaintiff's RFC and the ALJ did no analysis concerning Plaintiff's mental RFC other than his step three analysis. These errors requires a remand.

5

B.   *Step five*.

At step five, the ALJ found that "[c]onsidering Mr. Perryman's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (citations omitted)." Tr. 16.  In making this finding the ALJ relies on the grids.[2]  The decision states:

> If the claimant had the residual functional capacity to perform the full range of unskilled "light" work, considering his age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the additional limitations have little or no effect on the occupational base of unskilled "light" work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

Tr. 17.

This is error in that the grids cannot be applied conclusively if a claimant, as in this case, has nonexertional limitations that significantly limits his ability to perform the full range of work in a particular RFC category on a sustained basis.  *Teter v. Hecker*, 775 F.2d 1104, 1105 (10th Cir. 1985). The grids may only be applied when "the claimant's characteristics precisely match the criteria of a particular rule." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)(internal quotation omitted). "[S]ince nonexertional limitations are not factored into the grids but must be taken into account in determining a claimant's RFC, the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his 'ability to perform the full range of work in a particular RFC' category on a sustained basis."  *Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir. 1988(citation omitted).  As previously discussed, the ALJ found that Plaintiff's depression was severe at step two and thus found that Plaintiff's depression "significantly limits the....mental

---

[2] The Medical-Vocational Guidelines ("grids") are used at step five to determine whether a disability exists. 20 C.F.R. Part 404, subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various residual functional capacity levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. secs. 404.1566(d); 416966(d).  This aids the Commission in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, ie., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. S, Sec. 200(e)(2).

abilities to do basic work activities." 20 C.F.R. §404.1520(c). Plaintiff's RFC does not match any of the grids.

The ALJ states that he used the grids only as a framework. The grids may be used as a framework for a decision when there is,

> some substantial evidence to support the conclusion that the nature of the claimant's impairments does not take her case so far outside the norms contemplated by the grids as to make them no longer a relevant basis for decision. Typically, that proof comes from a vocational expert, who can provide testimony as to whether the claimant's particular limitations significantly erode the occupation base given her residual functional capacity.

*McKenna v. Astrue*, 2010 WL 148284, *3 (D. Colo. 2010)(*citing Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992). However, there is no basis for the ALJ's finding of "not disabled" other than the grids. The ALJ's conclusion is not supported by a vocational expert's testimony or any other source. *Williams v. Chater*, 64 F.3d 670(Table, Text in Westlaw), 1995 WL 490280 (10th Cir. 1995)("The grids may be used as a framework for evaluating disability, and when combined with evidence such as relevant testimony by a vocational expert, may support a finding of nondisability."). Because the ALJ did not obtain vocational testimony, the ALJ applied the grids conclusively to direct a finding of "not disabled." There is no basis in the decision for the ALJ's finding other than the grids. Thus, the ALJ decision is not supported by the substantial evidence and the ALJ did not apply the correct legal standard.[3]

The Court further notes that in the ALJ's recitation of the five-step sequential process, the ALJ inaccurately stated the burden at step five. In his decision, the ALJ wrote that the "claimant generally continues to have the burden of proving disability at this step," although "a limited burden of going forward with the evidence shifts to the Social Security Administration." Tr. 13.

---

[3]The Court notes that *Evans v. Chater*, 55 F.3d 530, 532-33 (10th Cir. 1995), cited by the Plaintiff does not support Plaintiff's argument and that in *Nixon v. Barnhart*, 2002 WL 31372286 (10th Cir. October 21, 2002), also cited by the Plaintiff, a vocational expert testified.

The Tenth Circuit Court of Appeals explained if the claimant established at step four that he cannot return to his past relevant work, the burden of proof shifts to the commissioner at step five to show that he retains the RFC to perform work in the national economy, given his age, education and work experience. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In an unpublished opinion, the Tenth Circuit stated that "[t]he claimant has no burden at step five." *Steward v. Shalala*, 999 F.2d 548, at *1 (Table, Text in Westlaw), 1993 WL 261958 (10th Cir. June 28, 1993)(*citing Thompson v. Sullivan*, 987 F.2d 1482, 14491 (10th Cir. 1993)).

Finally, the ALJ found that Plaintiff's obesity was severe. Tr. 13. In assessing Plaintiff's physical RFC the ALJ states that "Mr. Perryman's excessive weight to height ratio must also be considered in assessing his residual functional capacity." Tr. 15. There is no further mention of Plaintiff's obesity in the ALJ's decision. On remand, the ALJ must explain the effect obesity has on the RFC assessed and how the evidence concerning Plaintiff's obesity supports the RFC assessment.

As this matter will be remanded, the Court will not address any remaining arguments raised by the Plaintiff.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand filed December 9, 2009 [Doc. 24 ] is granted.

                                                      **ALAN C. TORGERSON**
                                                      **UNITED STATES MAGISTRATE JUDGE**